J-S23022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMONT CARLTON DANIEL | : | |
| | : | |
| Appellant | : | No. 1359 EDA 2017 |

Appeal from the Judgment of Sentence December 12, 2016
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0000319-2016

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS[*], P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED JULY 18, 2018**

Appellant Lamont Carlton Daniel appeals from the judgment of sentence of seven to fifteen years' imprisonment following a jury trial and convictions for possession with intent to distribute of a controlled substance (PWID),[1] possession of a controlled substance,[2] and possession of drug paraphernalia.[3] On appeal, Appellant raises five issues, including challenges to the warrantless search of his apartment, evidence regarding his status as a state parolee, and a "missing witness" jury charge. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(32).

We adopt the facts and procedural history set forth in the trial court's opinion. Trial Ct. Op., 6/1/17, at 1-6. We also add that the suppression record established that Appellant's landlord physically opened a rear window, through which the parole officers gained access to search Appellant's apartment. N.T. Suppression Hr'g, 4/27/16, at 8.

At trial, the Commonwealth presented evidence that Appellant was a parolee. Appellant testified in his defense and asserted that the drugs found in his apartment belonged to "Terrance," or "T" (Terrance). However, Appellant did not call Terrance to testify. The court, in relevant part, instructed the jury as follows: "You should not disbelieve the defendant merely because he is the defendant or because he was on state parole, nor may you infer any guilt because he was on state parole." N.T. Trial (charge), 6/16/16, at 12. The trial court also issued a missing witness instruction as to Terrance.

Moreover, as explained in further detail below, the jury notified the court that it arrived at a verdict on two charges but indicated it was deadlocked on the PWID charge. The court gave supplemental instructions to the jury and, after an additional half-hour of deliberation, the jury found Appellant guilty of all charges. Following a pre-sentence investigation,[4] the court sentenced Appellant on December 12, 2016, to seven to fifteen years' incarceration.

---

[4] We discuss the investigation in further detail below.

Appellant filed a timely post-sentence motion challenging, among other issues, the discretionary aspects of his sentence. The court denied Appellant's post-sentence motion, and he timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement.

In his brief, Appellant raises five issues:

1. Did the [trial] court err in denying [Appellant's] motion to suppress the evidence found by the state parole officers when, without a warrant, they searched [Appellant's] apartment and located the drugs and other paraphernalia?

2. Did the [trial] court err in denying [Appellant's] motion *in limine* which requested that no testimony be allowed as to [Appellant] being on "state parole" based on the likely prejudicial effect?

3. Did the [trial] court err in, either sua sponte or at the Commonwealth's request, grant the giving of the "missing witness" jury charge as it related to two uncalled witnesses?

4. Did the [trial] court improperly prejudice the jury deliberation through its comments made to the jury after the jury issued a message indicating that they were unable to reach a verdict on one of the three charges [Appellant] was facing?

5. Did the [trial] court impose an overly harsh sentence which was well beyond the aggravated range of the sentencing guidelines without any clear justification or reason?

Appellant's Brief at 9-10 (some capitalization omitted).

**Warrantless Search of Parolee's Apartment**

First, Appellant contends that the parole officers lacked reasonable suspicion to search his apartment. *Id.* at 21. Specifically, Appellant posits that reasonable suspicion was lacking because the parole officers relied on Appellant's prior criminal history, Appellant's recent positive drug test, and

the anonymous phone call of uncertain veracity. *Id.* at 24. In Appellant's view, the Commonwealth required additional evidence before searching his residence. *Id.* at 24-25.

The standard of review follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Freeman*, 150 A.3d 32, 34-35 (Pa. Super. 2016).

In *Commonwealth v. Williams*, 692 A.2d 1031 (Pa. 1997), the Pennsylvania Supreme Court discussed warrantless searches of a parolee's residence:

the parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches. Rather, the parolee's signature acts as acknowledgement that the parole

- 4 -

officer has a right to conduct reasonable searches[5] of his residence listed on the parole agreement without a warrant. A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty.

*Id.* at 1036.

The Pennsylvania Supreme Court in *Commonwealth v. Arter*, 151 A.3d 149 (Pa. 2016), reaffirmed the "reasonable suspicion" basis identified by the *Williams* Court: "pursuant to 42 Pa.C.S. § 9912, the General Assembly has made the policy determination that searches of parolees and probationers

_____

[5] "The determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances." *Commonwealth v. Colon*, 31 A.3d 309, 315 (Pa. Super. 2011).

In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Commonwealth v. Moore*, 805 A.2d 616, 619-20 (Pa. Super. 2002) (quotation marks, brackets, and citations omitted). The *Moore* Court explained, "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Id.* at 620 (citations omitted).

must be supported by a reasonable suspicion that the offender is in violation of the conditions of his probation or parole[.]" **Arter**, 151 A.3d at 165.[6]

Sections 6153(d)(2) and (d)(6) of the Prisons and Parole Code state as follows:

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

\* \* \*

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

---

[6] In **Arter**, it was undisputed the parole officer lacked reasonable suspicion for a warrantless search and thus, the seized evidence should have been suppressed under the exclusionary rule, "which bars the use of evidence obtained through an illegal search and seizure." **Arter**, 151 A.3d at 153.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(2), (6). With respect to establishing reasonable suspicion, a "tip from an unknown or anonymous informant requires some degree of corroboration to justify the finding of reasonable suspicion." *In re J.E.*, 937 A.2d 421, 426 (Pa. 2007). After careful consideration of the parties' briefs and our close review of the record, we affirm on the basis of the trial court's opinion. *See* Trial Ct. Op. at 13-14.

### Prejudicial Effect of Appellant's "State Parole" Status

Second, Appellant argues the court erred by denying his motion *in limine* to prohibit the Commonwealth from using the phrase "state parole." Appellant's Brief at 25. That phrase, Appellant reasons, would result in a moderately sophisticated juror presuming he had committed a serious offense. *Id.* Appellant opines that the resulting prejudice impacted the fairness of his trial. *Id.*

"Our Court reviews the grant of such a motion [*in limine*] by applying the scope of review appropriate to the particular evidentiary matter at issue. We note that this Court may reverse rulings on the admissibility of evidence only if it is shown that the trial court abused its discretion." *Commonwealth v. Phillips*, 700 A.2d 1281, 1284 (Pa. Super. 1997) (citations and internal

quotation marks omitted).[7] The critical inquiry is whether the probative value of the evidence of the defendant's parolee status outweighs any prejudicial impact. **Commonwealth v. Mollett**, 5 A.3d 291, 307 (Pa. Super. 2010) (holding probative value of evidence of defendant's state parole status outweighed any prejudicial impact as it established motive). "[T]here is no *per se* rule that requires a new trial for a defendant every time there is a reference to prior criminal activity." **Commonwealth v. Wallace**, 561 A.2d 719, 724-25 (Pa. 1989) (citation omitted). Upon review of the parties' briefs and the record, we affirm on the basis of the trial court's decision. **See** Trial Ct. Op. at 20.

### Propriety of the "Missing Witness" Jury Instruction

By way of background to Appellant's third argument, as noted above, Appellant testified at trial that the drugs belonged to Terrance. Additionally, Appellant's girlfriend testified for the defense and asserted, in relevant part, that she had Terrance's phone number. N.T. Trial (morning), 6/16/16, at 55.

The Commonwealth requested a "missing witness" jury charge. The Commonwealth insisted that only Appellant had Terrance's contact information and it had no ability to call Terrance as a witness. **Id.** at 66. Appellant objected on the basis that the defense had insufficient information

---

[7] We may rely on cases predating the enactment of the Pennsylvania Rules of Evidence so long as they do not contradict the rules. **Commonwealth v. Aikens**, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

to locate Terrance and that, if called, Terrance would have to admit "criminal conduct." *Id.* at 65. The Commonwealth countered that the record established that only Appellant had the necessary contact information. *Id.* at 66.

The trial court overruled Appellant's objection and issued the following instruction:

> There's a question about the weight, if any, you should give to the failure of [Appellant] to call a witness or witnesses. You heard about this person T. So the question is if three factors are present and there's no satisfactory explanation for a party's failure to call a potential witness, the jury is allowed to draw a common sense inference that the testimony would have been unfavorable to the party. The three accessory factors are, one, the person is available to that party and only [sic] and not the other; two, it appears that the person has special information material to the case; and, three, that the person's testimony would not be merely cumulative. Therefore, if you find these three factors present and there's no satisfactory explanation for the [Appellant]'s failure to call that witness, you may infer, if you choose to do so, that the testimony would have been unfavorable to [Appellant].

N.T. Trial (charge), 6/16/16, at 28.

Appellant contends there was no basis for the trial court to give the above "missing witness" jury charge. Specifically, Appellant claims that it was "questionable" as to whether "Terrance" or "T" was a witness only available to him. Appellant's Brief at 29; *see also* N.T. Trial (morning), 6/16/16, at 19-20 (testimony of Appellant that he knew the area, but not the exact location, of Terrance's home). Because Appellant's defense was that the drugs belonged to Terrance, Appellant reasons that Terrance would not want to appear in court to testify. *Id.*

The Commonwealth counters by summarizing Appellant's testimony that Terrance kept his belongings at the apartment and that Terrance had a key. Commonwealth's Brief at 15-16. The Commonwealth emphasizes that the drugs, according to Appellant, were in Terrance's room. *Id.* at 16.

> Our standard of review in assessing a trial court's jury instruction is as follows. When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Miller*, 172 A.3d 632, 645 (Pa. Super. 2017) (quotation marks and citations omitted).

> The missing witness adverse inference rule has been summarized as follows:

> > When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

> This Court has delineated the circumstances which preclude issuance of the instruction.

> > 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

> > 2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;[8]

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Boyle*, 733 A.2d 633, 638 (Pa. Super. 1999) (citations omitted).[9] "In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." *Bentivoglio v. Ralston*, 288 A.2d 745, 748 (Pa. 1972).

"[F]ear of criminal punishment and the disgrace of conviction are strong motivational factors for a criminal defendant to make certain that a witness who can exonerate him appears at trial." *Commonwealth v. Dorman*, 547 A.2d 757, 764 (Pa. Super. 1988). For example, in *Commonwealth v. Wright*, 282 A.2d 323 (Pa. 1971), the defendant was accused of murder, among other offenses. *Id.* at 323. The defendant testified in his own defense

---

[8] Satisfactory explanations include illness, *Commonwealth v. Johnson*, 838 A.2d 663, 678 (Pa. 2003), and concern for the witness's safety. *Commonwealth v. Jones*, 637 A.2d 1001, 1005 (Pa. Super. 1994).

[9] "The failure to produce evidence reflects on the credibility of the opposing evidence but does not itself represent evidence that satisfies the burden of production." Leonard Packel & Anne Bowen Poulin, Pennsylvania Evidence § 427 (4th ed. 2013) (footnote to citations omitted).

and stated that he was with four other people, but he did not call any of his alibi witnesses. *Id.* at 324. The Pennsylvania Supreme Court was asked if "a defendant raises an alibi and testifies as to the existence of named alibi witnesses who know him personally, and if these witnesses are not called, is it fair for the jury to infer that their testimony would be adverse to the defendant?" *Id.* at 325. The *Wright* Court held that under these facts, the Commonwealth was entitled to a missing witness instruction. The Court acknowledged that "if the jury chooses to draw an adverse inference from a defendant's failure to call named alibi witnesses, his case may be affected because his alibi is not believed. But the credibility of defendant's testimony is always something which he must consider before he takes the stand." *Id.*[10]

Here, Appellant has failed to establish that the court should not issue the instruction. *See Boyle*, 733 A.2d at 638. First, Terrance allegedly lived at Appellant's residence and Appellant had Terrance's contact information. *See* N.T. Trial (morning), 6/16/16, at 55. However, Appellant never attempted to procure Terrance's presence, whether voluntarily or via subpoena. Second, although Appellant proffers a seemingly satisfactory reason for not calling Terrance—specifically that Terrance would be admitting

---

[10] The *Wright* Court, however, reversed and remanded for a new trial because the trial court's missing witness instruction was excessively "coercive." *Wright*, 282 A.2d at 326.

to criminal conduct—that explanation is flawed. Appellant engages in self-serving speculation that the drugs were, in fact, Terrance's and that Terrance would refuse to testify, rather than implicate Appellant.[11] Given the deferential abuse-of-discretion standard of review, we cannot say under the unique circumstances of this case that the court erred. **See Miller**, 172 A.3d at 645.[12]

### Trial Court's Supplemental Jury Charge

Before summarizing Appellant's fourth argument, we set forth the following as background. As the trial court accurately recounted, the jury retired to deliberate and advised the court that it could not reach a verdict on one count. Trial Ct. Op., 6/1/17, at 27-28. After the jury returned to the courtroom, the court engaged the jury as follows:

> The court: Okay. Now, with respect to that [deadlocked charge,] is there some aspect of the instruction that I can assist with? Is there some area of debate that pertains to the law that by giving you some clarifying instruction that that will assist the jury? Or is it just do people seem to have fixed opinions concerning the factual basis as opposed to the legal issues?
>
> The foreperson: No. It's more of a fixed opinion.

---

[11] We acknowledge the practical reality that even if Terrance appeared in court, he would be unlikely to incriminate himself without immunity. But we hesitate to unwaveringly accept Appellant's unsubstantiated proffer that Terrance would **not** testify that the drugs were his.

[12] We note the trial court should, with great care, consider whether such an instruction is necessary. Indeed, we would be remiss if we did not acknowledge that the jury briefly deadlocked on the PWID charge.

The court: Okay. Do you believe that there is some aspect that can assist in breaking this deadlock, something that I can do to assist in that regard?

The foreperson: No.

The court: No. You don't believe so. Now, you understand that you have a duty to consult with each other towards reaching a verdict in the case, if it can be done without doing interference with any of your individual judgment. In answer to your question concerning whether you can return a verdict as to two counts, the answer to that in a general sense is yes. However, with that said, the district attorney and defense counsel will have -- and this Court might not be able to -- well, let me rephrase it because I want to be careful what I say. If you return a verdict on two of the counts, there is some doubt as to whether the first count -- whether there can be another trial on the first count. Do you understand what I'm saying? Generally speaking, that if there is a mistrial in a case where the jury can't reach a decision on any of the counts, then the Commonwealth would be permitted, generally speaking, to retry the case. However, that would involve another jury like yourself and going through the same protocol that we've gone through over the course of this trial. Your situation is what I'll call a hybrid situation, meaning that you've reached a verdict on two of the counts but not the third count. And there is some doubt as to whether or not the Commonwealth would be able to retry Count Number 1 [*i.e.,* PWID]. Do you understand?

The foreperson: Yes.

The court: Okay. Does everybody understand that?

(Whereupon the jurors shake their heads.)

The court: Let me ask the jurors, do any of you believe, and you can raise your hands, that further deliberations would assist in reaching a verdict in this case? Is there anybody – I'll just ask it, does anybody feel further deliberations will assist you in reaching a verdict? If yes, raise your hand.

(No response.)

- 14 -

The court: If no -- yes. Three jurors -- four jurors believe that further deliberations might assist them in reaching a verdict. And how many feel that no further deliberations will assist you in reaching a verdict? Two. Okay. So it really is -- and other people are undecided. Okay. So what I'm going to suggest is, and let me read to you what you heard me say before, about you have a duty to consult with each other and to deliberate towards reaching an agreement if it can be done without doing any interference with your individual judgment. Each juror must decide the case for himself or herself, but only after there's been impartial consideration with his or her fellow jurors. In the course of deliberations, a juror should not hesitate to reexamine his or her views and change his or her opinion if convinced it is mistaken. No juror, however, should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict. Keeping these instructions in mind, I'm going to send you back to the jury deliberation room for additional further deliberations. And if you reach the point where you don't believe that further deliberations will assist you, . . . you need to alert me to that fact. So I'm going to send you out for additional deliberations at this point. Before I do that, I'm going to see if either counsel want to discuss this matter with me at sidebar.

[Appellant's counsel]: What I care to discuss can be done after the jury exits. . . .

(Whereupon the jury exited the courtroom at 5:27 p.m.) . . .

[Appellant's counsel]: Judge, I'll bring it up now. I would ask the Court not to instruct the jury on things like a retrial or the options that happen after that. I think it introduces into their deliberations things that are not appropriate on the facts of the case.

The court: I understand. However, if you look at the procedure, let me read to you -- just so that you know, I have my own instructions, but it really mirrors what is in the standard instructions. And it says the following. I'll avoid making mention of it. It is in my standard instructions. It's not necessarily the way it is specified in the standard jury instructions, but it's consistent, I think, with the case law and the ABA standards.

[Appellant's counsel]: Thank you, Your Honor.

N.T. Trial (charge), 6/16/16, at 59-63 (some capitalization omitted). As noted above, the jury deliberated an additional half-hour and found Appellant guilty on all charges.

Appellant contends the court erred when it issued supplemental instructions after the jury stated they were at an impasse with respect to one charge. Appellant's Brief at 30-31. Specifically, Appellant disagrees with the court's comment that a mistrial on the PWID charge may not result in another trial. *Id.* at 31. Appellant takes issues with the trial court's conclusion that he waived the issue by not objecting. *Id.*; *see also* Trial Ct. Op., 6/1/17, at 28. Appellant notes that counsel "brought the issue to the court's attention and indicated that such instructions were not appropriate." Appellant's Brief at 32. Appellant construes the court's comment as an impermissible "prod" by the trial court to compel the jury to reach a unanimous verdict on that count. *Id.*

As set forth above, the standard of review is abuse of discretion or error of law. *Miller*, 172 A.3d at 645. Pennsylvania Rule of Criminal Procedure 647 provides:

> (C) No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.
>
> (D) After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties, except that the defendant's absence without cause shall not preclude proceeding, as provided in Rule 602.

Pa.R.Crim.P. 647(C)-(D). But a "specific and timely objection must be made to preserve a challenge to a particular jury instruction." ***Commonwealth v. Moury***, 992 A.2d 162, 178 (Pa. Super. 2010); ***accord Commonwealth v. Hitcho***, 123 A.3d 731, 756 (Pa. 2015).

> Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

***Dilliplaine v. Lehigh Valley Trust Co.***, 322 A.2d 114, 116-17 (Pa. Super. 1974) (footnotes omitted).

Here, Appellant asked the trial court to not "instruct the jury on things like a retrial or the options that happen after that." N.T. Trial (charge), 6/16/16, at 62-63. Appellant briefly explained his belief that "it introduces into their deliberations things that are not appropriate on the facts of the case." ***Id.*** at 63. We agree with the trial court that Appellant has not established that either statement, or both read together, constitutes a specific objection. ***See*** Trial Ct. Op. at 28; ***Moury***, 992 A.2d at 178. We simply

- 17 -

discern nothing in such statements that would have alerted the trial court that it made an error such that the jury should be recalled from its deliberations. *See Moury*, 992 A.2d at 178. For these reasons, Appellant has not established entitlement to relief.

**Challenge to Discretionary Aspects of Appellant's Sentence**

By way of background, the court ordered a pre-sentence investigation report, but Appellant refused to cooperate. Thus, the report was prepared without Appellant's participation and was designated a "partial presentence report." N.T. Sentencing Hr'g, 12/12/16, at 23. At the sentencing hearing, the trial court stated that it considered the sentencing guidelines, partial presentence report, and nature and circumstances of Appellant's crimes. *Id.* at 22-23. The court discussed that the crimes occurred while Appellant was on parole and his lengthy almost two-decade criminal history. *Id.* at 23-26. Accordingly, the court concluded that a deviation from the sentencing guidelines was warranted because Appellant was likely to reoffend. *Id.* at 26.

For his last issue, Appellant challenges the discretionary aspects of his sentence. Specifically, Appellant contends his sentence was excessive as it was double the standard range sentence and the court failed to sufficiently justify such a sentence. Appellant's Brief at 34. Appellant maintains that the one reason the court gave—that Appellant was on parole at the time of the underlying crimes—was "disingenuous as it failed to recognize" Appellant would face a significant parole-revocation sentence. *Id.* at 35.

In **Commonwealth v. Luketic**, 162 A.3d 1149 (Pa. Super. 2017), we explained as follows:

> A challenge to the discretionary aspects of a sentence is not appealable as of right. Therefore, before we may exercise jurisdiction to reach the merits of Appellant's claim, we must verify that Appellant's appeal is properly before this Court—that is, that his appeal was timely filed and that the issues he seeks to raise were properly preserved. If so, we must then determine whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence pursuant to Appellate Rule 2119(f), and whether that concise statement raises a substantial question that the sentence is appropriate under the sentencing code. Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim.

**Id.** at 1159-60 (citations, footnote, and most punctuation omitted).

Here, Appellant has timely appealed and filed a timely post-sentence motion preserving his issue. **See id.** Appellant's brief has also included a one-sentence Rule 2119(f) statement, to which the Commonwealth did not object. **See Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004).[13] We turn to whether Appellant has presented a substantial question that his sentence was inappropriate.

_____

[13] It is well-settled that the Rule 2119(f) statement must comply with the following:

> [T]he Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify

"A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." **Luketic**, 162 A.3d at 1160 (citation omitted). A "contention that the sentencing court exceeded the recommended range in the Sentencing Guidelines without an adequate basis raises a substantial question for this Court to review." **Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008). A manifestly excessive sentence also raises a substantial question, even if the sentence is within the statutory limits. **Commonwealth v. Mouzon**, 812 A.2d 617, 624 (Pa. 2002); **Commonwealth v. Kelly**, 33 A.3d 638, 640 (Pa. Super. 2011). Here, because Appellant has claimed that the court imposed a sentence outside the Sentencing Guidelines without sufficient justification, he has raised a substantial question that we review on the merits. **See Luketic**, 162 A.3d at 1162.

> Our standard of review follows: Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In order to establish that the sentencing court abused its discretion, the defendant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or

---

> what fundamental norm the sentence violates and the manner in which it violates that norm. . . .

**Commonwealth v. Googins**, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*).

ill will, or arrived at a manifestly unreasonable decision. The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Id.* at 1162-63 (citations, quotation marks, and brackets omitted). "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Here, as the trial court acknowledged, a presentence investigation report exists, albeit it was prepared without Appellant's cooperation. Trial Ct. Op. at 18. The trial court also indicated it reviewed the sentencing guidelines and considered the nature and circumstances of Appellant's present and past offenses, as well as the import of his parole status. N.T. Sentencing at 22-26. Accordingly, we perceive no abuse of discretion by the trial court. ***See Luketic***, 162 A.3d at 1162-63. For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/18

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                :

          vs.                   : NO. CR-319-2016
                                  : Superior Court No.: 1359 EDA 2017

LAMONT DANIEL                 :

## ORDER

**AND NOW**, this 1st day of June, 2017, it appearing that the appellant, Lamont Daniel, filed a "Notice of Appeal" on April 24, 2017; it further appearing that a timely "Concise Statement of Matters Complained of On Appeal" pursuant to Pa.R.A.P. 1925(b) was filed on May 16, 2017; it further appearing that the attached Opinion satisfies the requirements of Pennsylvania Rule of Appellate Procedure 1925(a);

**IT IS HEREBY ORDERED** that the Clerk of Judicial Records, Criminal Division, shall transmit the record in the above-captioned matter to the Superior Court forthwith;

**IT IS FURTHER ORDERED** that the Clerk of Judicial Records shall include with the transmittal of the record the following documents:

1. A copy of the appellant's Pre-Sentence Investigation Report submitted for review by the Superior Court, as well as memoranda prepared by Probation Officer Darrah dated August 17, 2016, and December 9, 2016, and said report and memoranda shall be sealed to preserve their confidentiality pursuant to Pa.R.Crim.P. 703.

2. Notes of Testimony from the Trial held on June 15, 2016, through June 16, 2016.

3. Notes of Testimony of the Jury Charge and Verdict dated June 16, 2016.

4. Notes of Testimony from the Sentencing held on December 12, 2016, and Continuance Hearing held on October 26, 2016.

5. Notes of Testimony from the Suppression Hearing held on April 27, 2016.

6. Notes of Testimony from Motion in Limine Hearing held on June 13, 2016.

BY THE COURT:

_____
Robert L. Steinberg, Judge

**SERVICE**

DATE ___6/1/17___

TIME: _____ INITIALS ___MAD___

☐ LODGE:
    DA PD COLL PROB LCP CA JUDGE OTHER:

☐ PERSONAL DELIVERY: _Completed_
    (DA PD) COLL PROB LCP CA JUDGE OTHER:
                        DOPA

☐ REGULAR MAIL:
    DEFT ATTY
    OTHER:

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :

        vs.

LAMONT DANIEL

: NO. CR-319-2016
: Superior Court No.: 1359 EDA 2017
:

\* \* \* \* \*

Appearances:

    Heather Gallagher, Chief of Appeals
        For the Commonwealth

    Michael Brunnabend, Esquire
        For the Appellant

\* \* \* \* \*

## OPINION

**Robert L. Steinberg, Judge:**

On June 16, 2016, after a jury trial, the appellant was found guilty of Possession

With Intent to Deliver a Controlled Substance,[1] heroin; Possession of a Controlled Substance;[2]

and Possession of Drug Paraphernalia.[3] A search of the appellant's apartment by agents of the

Pennsylvania Board of Probation and Parole uncovered one hundred and twenty-nine (129) bags

of heroin in a shoe box in the bedroom of that apartment.

A presentence report was ordered after the jury's verdict, but the appellant refused

to speak with the presentence investigator.[4] A hearing was held on that issue, and the appellant,

---

[1] 35 P.S. § 780-113(a)(30).
[2] 35 P.S. § 780-113(a)(16).
[3] 35 P.S. § 780-113(a)(32).
[4] Notes of Testimony, Hearing (hereinafter N.T.H.), October 26, 2016, at pp. 8-9.

through his counsel, agreed to meet with the presentence investigator.[5] However, the appellant later declined "to participate in the investigation [and] was not interested in providing any information to [the presentence investigator]."[6] As a result, a partial presentence report was prepared which consists primarily of the appellant's prior criminal history.

A sentencing hearing was held on December 12, 2016, during which the appellant's extensive prior history of drug dealing was reviewed. The appellant, who was on state parole for felony drug offenses, had a history of similar convictions dating back to 1997.[7] He was released on state parole on September 15, 2014, and was arrested on these charges on November 20, 2015. This conviction is now the appellant's fifth conviction for felony drug offenses.[8]

The appellant was then sentenced to not less than seven (7) years nor more than fifteen (15) years in a state correctional institution. On December 20, 2016, counsel filed "Defendant's Post-Sentence Motions Pursuant to Pennsylvania Rule of Criminal Procedure 720." Those motions were denied on April 10, 2017. A Notice of Appeal was filed on April 24, 2017, and the appellant was then directed to comply with Pa.R.A.P. 1925(b). On May 16, 2017, appellate counsel filed a "Concise Statement of Matters Complained of On Appeal," which alleges search and seizure, sentencing, and trial court errors.

---

[5] Id. at p. 14.

[6] Notes of Testimony, Sentencing (hereinafter N.T.S.), at p. 3; see also Memorandum of Christine Darrah, dated December 9, 2016.

[7] N.T.S., at p. 7.

[8] The presentence report discloses convictions for felony drug offenses in 1997 (2), 2001, and 2009 for offenses which occurred in 1993, 1995, 2001, and 2009. He was last sentenced on October 2, 2009, to not less than five (5) nor more than ten (10) years in a state correctional institution for Criminal Conspiracy to Possession With Intent to Deliver.

## Background

The testimony at trial and the suppression hearing centered on the search of the appellant's apartment and the discovery of one hundred and twenty-nine (129) packets of heroin in his bedroom closet. The search was conducted by agents of the State Board of Probation and Parole. Some of the testimony from the suppression hearing, however, was excluded at trial. The Commonwealth was <u>not</u> permitted to introduce the appellant's prior criminal history or the circumstances leading up to the search of his apartment. They were allowed to introduce testimony that he was on state parole, but <u>not</u> testimony that he was on state parole for a felony drug offense, nor the sentence imposed for that offense, including that it was served in state prison.[9]

The testimony from the trial revealed that on November 20, 2015, a team of agents from the Pennsylvania Board of Probation and Parole conducted a search at 40 North Eighth Street in Allentown, the appellant's residence. Agent Christopher Huben testified the appellant provided that address, and he had visited that address "many times" in the performance of his duties.[10] The appellant used the living room for sleeping and the bedroom was "cluttered up, mostly clothing."[11] No one else was living at that residence according to Agent Huben.[12]

On the day of the search, the appellant appeared at the probation office where he was placed in custody. The reasons for his custodial status was <u>not</u> elicited at trial, but will be reviewed in discussing the suppression claims. He was then taken to his residence for the search of his apartment. The appellant, however, had no keys to the apartment. As a result, the landlord was contacted to gain entry. The landlord was not able to enter the apartment with his

---

[9] Motion in Limine, Hearing (hereinafter Hearing), June 13, 2016, at pp. 9-11.
[10] Notes of Testimony, Trial (hereinafter N.T.T.), Volume I, at pp. 65, 75.
[11] <u>Id</u>. at p. 66.
[12] <u>Id</u>. at p. 67.

3

"key ring set," and eventually entry was gained by Agent Amy Crush through a window at the back entrance.[13]

The landlord, Walter Decker, testified that he rented the apartment at 40 North Eighth Street to the appellant.[14] The signed lease, which was introduced into evidence, identified the appellant as the tenant, and to Mr. Decker's knowledge, the appellant was the sole tenant.[15] On the day of the search, Mr. Decker was contacted by state parole, and responded to the appellant's apartment. He was unable to open the apartment with keys on his key ring.[16]

Agent Crush, who is a supervisor with the Pennsylvania Board of Probation and Parole, entered the appellant's apartment through a window off the fire escape. The landlord had a screwdriver and pried open the window, and after gaining entry, she opened the door to the apartment. The appellant remained in the living room with Agent Huben while Agent Crush searched the back bedroom closet. In that closet she found "a [shoe] box that contained a Tupperware container with rice and suspected heroin."[17]

Agent Michael Buffington also assisted in the search and discovered cash and a box for a digital scale which contained "small waxine packets commonly used to package narcotics."[18] Those items were found "five, six steps out of the closet" from where Agent Crush made her discovery.[19] The cash was found in the pocket of a jacket on the floor outside the closet.[20]

The search was stopped once the suspected heroin was discovered, and the Allentown Police were contacted. Detective Robert Flores responded to the apartment, and after

---

[13] Id. at p. 72.
[14] Id. at pp. 43-44.
[15] Id. at pp. 48-49, 85.
[16] Id. at p. 61.
[17] Id. at pp. 86-87, 95.
[18] Id. at p. 105.
[19] Id. at p. 108.
[20] Id. at pp. 109-110.

4

the appellant executed a consent to search form, a search of the apartment was conducted. He took the suspected heroin and paraphernalia into custody. The suspected heroin was determined to be actual heroin by Adam Shober, a forensic drug analyst with the Pennsylvania State Police.[21] The total weight was calculated at "5.1 grams plus or minus 0.4 grams."[22] One hundred twenty-nine (129) bags were submitted for analysis.[23]

Detective John Gill was qualified as an expert in narcotics investigations, which included testimony regarding the value of the heroin. It was his opinion, based upon all the circumstances that the quantity of heroin was not consistent with personal use, but instead, "dealing." The value was between "$800 and $1,300... in Allentown."[24]

The appellant testified and did not contest that he resided at the residence where the heroin was discovered, but contended that it was not his heroin.[25] He testified that a former co-worker, "Terrance or T," asked to store his belongings at his apartment.[26] He also gave this individual, who he further identified as Terrance Fernando, keys to his apartment "so he had access to get his stuff whenever he needed."[27] He was unsure, however, where "Terrance" was living.[28]

The appellant agreed that he did not have the keys to his apartment when he arrived at the probation office. He testified that he had left them in the change holder of "Sue's" vehicle, who had taken him to the probation office.[29] He did not know "Sue's" last name.[30]

---

[21] N.T.T., Volume I, at pp. 158, 164.
[22] Id. at pp. 158, 162, 165.
[23] Id. at pp. 159, 162.
[24] Id. at p. 185.
[25] N.T.T., Volume II, at pp. 13, 25-26.
[26] Id. at pp. 14-16.
[27] Id. at pp. 16, 34.
[28] Id. at p. 19.
[29] Id. at pp. 30-31.
[30] Id.

His girlfriend, Wendy Chelder, testified that she met "T" at the appellant's apartment, and saw him there "frequently." She testified that he was there the night before the appellant was arrested. She also knew that he had a key. Neither "Sue" nor "T" testified at trial.

## Discussion

### a. Motion to Suppress

The Motion to Suppress, which was filed on April 1, 2016, alleged that the state parole agents who searched the appellant's apartment lacked "reasonable suspicion" to do so.[31] A hearing on that matter was held on April 27, 2016, during which Agent Huben and Supervisor Crush testified.

The Commonwealth also introduced an e-mail from a clerk typist at the Pennsylvania Board of Probation and Parole regarding a call she had received from a "Brittany," who reported that the appellant was "manufacturing and selling crack/cocaine and is threatening to put battery acid into his drugs that he is selling."[32] The only other identifying information regarding "Brittany" was that she was a customer of the appellant's.

The testimony from the hearing revealed that the appellant was on state parole due to a felony drug offense. During the week leading up to the search, the appellant had a series of missteps regarding his compliance with supervision. A home visit was conducted on November 9, 2015, and the appellant tested positive for cocaine. The appellant denied using cocaine, but did admit that he was "around" the drug. On November 13, 2015, the appellant, at an office conference with Agent Huben, not only admitted to being "around" the drug, but to

---

[31] Motion to Suppress Evidence, ¶ 14.
[32] Commonwealth's Suppression Exhibit (hereinafter C.S.E.) 1.

using cocaine as well. Due to this admission, additional reporting and testing conditions were added to the appellant's parole supervision.

The information from "Brittany" was received by Agent Huben on November 17, 2015, and he discussed that information with his supervisor. A decision was made to search the appellant's residence on November 20, 2015. The appellant was directed to report that day, and when he did he was taken into custody. He was escorted to his residence but was unable to produce his keys. His explanation for the missing keys was that he had received a ride from "Wendy" to the state parole office. "Wendy" was contacted and told the agents that she did not give the appellant a ride, and did not have his keys.[33]

The landlord was contacted as aforementioned, and with his permission and assistance, access was gained into the appellant's apartment. Supervisor Crush was able to scamper through a window and open the front door for the other agents. The heroin was located in the rear bedroom closet,[34] and charges were filed by the Allentown Police Department.

It is well-settled that an individual being supervised on probation or parole is not afforded the same protection as ordinary citizens when a search is conducted of his or her person or property. Commonwealth v. Williams, 692 A.2d 1031, 1035 (Pa. 1997). The reason for limited privacy rights for those on parole or probation has been justified with the following explanation:

> Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search. Essentially, parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison.

---

[33] Notes of Testimony, Suppression Hearing (hereinafter N.T.Supp.), at pp. 15-17.
[34] Id. at pp. 36-37.

7

> The search of a parolee is only reasonable, even
> where the parolee has signed a waiver . . . where the totality
> of the circumstances demonstrate that (1) the parole officer
> had reasonable suspicion to believe that the parolee
> committed a parole violation; and (2) the search was
> reasonably related to the duty of the parole officer.

Commonwealth v. Colon, 31 A.3d 309, 315 (Pa.Super. 2011) quoting Commonwealth v. Hunter, 963 A.2d 545, 551-52 (Pa.Super. 2008); see also Commonwealth v. Parker, 152 A.3d 309, 316-317 (Pa.Super. 2016).

A more paternalistic viewpoint is that parole officers are in a supervisory relationship with offenders "to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public." Commonwealth v. Smith, 85 A.3d 530, 536 (Pa.Super. 2014); 61 Pa.C.S. § 6153(a). "Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society." Id. Therefore, "[p]robationers and parolees are subject to both the general and individual rules of conduct and supervision described at sentencing and/or in their parole agreement." Id.

To achieve those goals, a statutory framework was created which permits the search of both person and property based on reasonable suspicion. The actions of state parole agents are guided by 61 Pa.C.S. § 6153, which provides, in pertinent part, the following:

> **(b) Searches and seizures authorized. --**
> (1) Agents may search the person and property of offenders in accordance with the provisions of this section.
> (2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.
> * * *
> **(d) Grounds for personal search of offender.--**
> (1) A personal search of an offender may be conducted by an agent:

8

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

(ii) when an offender is transported or taken into custody; or

(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision. (emphasis added).

\* \* \*

(6) the existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6153(b), (d).

In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion]... warrant a man of reasonable caution in the belief that the action taken was appropriate." Terry v. Ohio, 392 U.S. 1, 21 (1968)(internal quotations omitted); Commonwealth v. Zhahir, 751 A.2d 1153, 1156 (Pa. 2000). "The determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances." Colon, 31 A.3d at 315; see also Commonwealth v. Moore, 805 A.2d 616, 620 (Pa.Super. 2002). Therefore, all of the information in Agent Huben's

9

possession prior to entering the appellant's apartment could be considered in reaching a reasonable suspicion determination that either contraband or other violations of supervision would be uncovered by searching the appellant's apartment.

The suspicions of Agent Huben were raised when the appellant tested positive for cocaine, and provided a rather lame excuse for the positive test. They were not diminished when the appellant changed his story a few days later and admitted using cocaine. Even so, and with knowledge that the appellant was being supervised for a felony drug offense, a search of the appellant's residence was not undertaken.

The critical piece of information which led to the search was the information provided by "Brittany." Her persistence in trying to reach Agent Huben alerted him to the appellant's intentions. Specifically, the appellant was not only "manufacturing and selling crack/cocaine," but also potentially harming users of the cocaine with "battery acid."

The agents, armed with all of the information acquired over the previous eleven (11) days, set in motion a plan to search the appellant's residence. He was asked for the key to his apartment, but attempted to thwart their access by claiming it was in the possession of "Wendy." This was an attempt to deceive the agents because "Wendy" was contacted and denied she had given the appellant a ride or had his key. His attempt to obstruct demonstrates a consciousness of guilt, and it is relevant to establish reasonable suspicion.

During the suppression proceedings, defense counsel argued that since heroin rather than cocaine was discovered, and the agents found no evidence of "battery acid," the information provided by "Brittany" was unreliable, and impugned a finding of reasonable suspicion. In the regard, "in order for an anonymous tip to give rise to reasonable suspicion, it must be of sufficient quality that it may be found reliable." Commonwealth v. Coleman, 130 A.3d 38, 47 (Pa.Super. 2015).

10

Although information provided by an anonymous caller is closely scrutinized, that does not mean that reasonable suspicion cannot be established with information provided by an anonymous caller. Alabama v. White, 496 U.S. 325 (1990). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Id. at 330. See also Commonwealth v. Lechner, 685 A.2d 1014, 1018 (Pa.Super. 1996). "[T]here are situations in which an anonymous tip, suitably corroborated exhibits 'sufficient indicia of reliability to provide reasonable suspicion....'" Id. at 327. See also Williams, 692 A.2d at 1037 (A tip from an unknown or anonymous informant requires some degree of corroboration to justify the finding of reasonable suspicion.).

Here, the information provided by "Brittany" demonstrated a degree of inside information. She was aware that the appellant was on state parole and had a "hot urine." See Commonwealth v. Fell, 901 A.2d 542, 545 (Pa.Super. 2006)(Inside information – "a specific familiarity with [the person's] affairs;" provides corroboration for reasonable suspicion.) Additionally, her repeated contacts with the state parole office rather than an isolated call tends to support the conclusion that she wanted to alert the proper authorities of the danger the appellant presented.

It was also argued that the evidence upon which the agents acted was stale because it was obtained eleven (11) days prior to the search. This argument is not entirely accurate. Agent Huben's suspicions were first aroused on November 9th, 2015, when the appellant produced a positive drug screen. The appellant initially denied using drugs, but later admitted on November 13, 2015, that he did ingest cocaine which caused his positive drug

11

screen. Next, Agent Huben was informed by email dated November 17, 2015, of the call made by "Brittany" to the state parole office, in which she claimed that the appellant was manufacturing and selling "crack/cocaine" and threatening to use battery acid. Following his receipt of this email, Agent Huben spoke with Supervisor Crush regarding his suspicions, and together they determined that there was enough evidence to conduct a search of the appellant's residence when he arrived for a prearranged meeting at the state parole office on November 20, 2015. Only three (3) days passed between the time Agent Huben received that last piece of information and the time that the search was actually conducted. This is in stark contrast to the eleven (11) day period asserted by defense counsel.

Though a court should consider the age of information in determining whether there is adequate suspicion justifying a search, the court must ultimately determine whether the evidence is likely to be still found at the searched property. United States v. Strickland, 237 F. App'x 773, 778 (3d Cir. 2007) quoting United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002). A review of the relevant cases further demonstrates that the courts "focus on whether the items sought in the warrant are often disposed of after coming into someone's possession." Commonwealth v. Hoppert, 39 A.3d 362 (Pa.Super. 2012)("Age alone… does not determine staleness. The determination of staleness is not merely an exercise in counting the days or even months between the facts relied on to conduct the search. The nature of the crime and the type of evidence must also be examined.). See Commonwealth v. Janda, 14 A.3d 147, 159 (Pa.Super. 2011)(Shoes are not an item commonly disposed of soon after they come into their owner's possession, and authorizing search for shoes connected to a seven month old burglary was not unreasonable.); Hoppert, 39 A.3d at 363-364 (Search warrant did not contain stale information even though based on e-mails sent from account opened at appellant's address eight months prior to issuance of warrant.); Commonwealth v. Gomolekoff, 910 A.2d 710, 714 (Pa.Super.

12

2006)(Images of child pornography sent nine-and-a-half months prior to issuance of search warrant was not based on stale information because pedophiles rarely dispose of child pornography.); Commonwealth v. Klinedinst, 589 A.2d 1119, 1122 (Pa.Super. 1991)(A showing that the criminal activity is likely to be continuing will render otherwise stale information viable.); Cf. Commonwealth v. Novak, 335 A.2d 773, 775-776 (Pa.Super. 1975)(Observation of narcotics seven weeks prior to search warrant was based on stale information because drugs are readily disposable.). "The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) quoting United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983).

Although Agent Huben did not conduct his search immediately following the positive drug screen, that is not dispositive here because more information was gathered to suggest the appellant was engaged in ongoing criminal activity. "Where there is 'continuing activity' up until or near the date of the warrant, otherwise stale information may be used to establish probable cause." Commonwealth v. Marzel, 436 A.2d 639, 641 (Pa.Super. 1981); see also Commonwealth v. Shaw, 281 A.2d 897, 899 (Pa. 1971). Here, the appellant's positive drug screen was followed a few days later by a phone call claiming that the appellant was manufacturing and selling drugs. The challenged search was ultimately conducted three (3) days after the phone call, and eleven (11) days after the positive drug screen.

The information in Agent Huben's possession suggested not only use, but that the appellant was actually manufacturing drugs. While drugs are easily disposable, the packaging or scales used for weighing or measuring controlled substances are usually not immediately discarded. It follows that three (3) days after the anonymous tip, items used in the manufacture

13

or sale of drugs are likely to still be present in the appellant's residence. Therefore, the search was not based on stale information.

Finally, the appellant does not stand in the shoes of an ordinary citizen. He was on parole for a felony drug offense. He had tested positive for cocaine, and had initially denied use. He attempted to prevent the agents from entering his home by concocting a reason for not having a key to his residence. Although some of the information provided by "Brittany" was incorrect, her information was sufficiently corroborated.

Based upon the totality of the circumstances, reasonable suspicion was established to justify the search of the appellant's residence, and the Motion to Suppress was properly denied by this Court on May 26, 2016.

## b. Sentencing

The appellant, who had recently been released on state parole, has now been convicted five (5) times for felony drug offenses. His state parole followed his conviction in 2009 for a felony drug offense for which he received a sentence of not less than five (5) years nor more than ten (10) years in a state correctional institution. A review of his presentence report discloses almost twenty (20) years of convictions for felony drug offenses.

The sentence imposed of not less than seven (7) years nor more than fifteen (15) years was a deviation from the Sentencing Guidelines,[35] but substantially less than the statutory maximum sentence of thirty (30) years. The appellant, as an offender convicted of a second or subsequent offense under 35 P.S. § 780-113(a)(30), could have been "imprisoned for a term up to twice the term otherwise authorized...." See 35 P.S. § 780-115(a). The charge of Possession

---

[35] The appellant's prior record score was a five (5) and the offense gravity score for the quantity of heroin retrieved is a seven (7), making the standard range of the Sentencing Guidelines 24 – 30 months. See 204 Pa. Code § 303.16(a)(Basic Sentencing Matrix).

14

With Intent to Deliver heroin carries a maximum sentence of fifteen (15) years, but due to the appellant's prior convictions, the maximum sentence is increased to thirty (30) years.

The appellant objects to the sentence imposed, but overlooks that his most recent conviction resulted in a sentence of not less than five (5) nor more than ten (10) years. In light of the appellant's history of convictions, a deviation from the Guidelines was warranted.

"It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." Commonwealth v. Edwards, 71 A.3d 323, 329 (Pa.Super. 2013); Commonwealth v. Griffin, 65 A.3d 932 (Pa.Super. 2013); Commonwealth v. Ladamus, 896 A.2d 592, 595 (Pa.Super. 2006); Commonwealth v. Shugars, 895 A.2d 1270, 1274 (Pa.Super. 2006); Commonwealth v. McNabb, 819 A.2d 54, 55 (Pa.Super. 2003). The appellant must demonstrate that a substantial question exists concerning the sentence. Commonwealth v. Lee, 876 A.2d 408, 411 (Pa.Super. 2005).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." Commonwealth v. Moury, 992 A.2d 162, 170 (Pa.Super. 2010); Commonwealth v. Perry, 883 A.2d 599, 602 (Pa.Super. 2005). As stated in Moury, "[a] substantial question exists 'only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.'" Id. See also Commonwealth v. Austin, 66 A.3d 798, 808 (Pa.Super. 2013). Bald allegations of sentencing errors or excessiveness do not constitute a substantial question. Moury, 992 A.2d at 170; Commonwealth v. Trippett, 932 A.2d 188, 202 (Pa.Super. 2007) quoting Commonwealth v. Mouzon, 812 A.2d 617, 620 (Pa. 2002). Likewise, a substantial question requires something more than alleging the failure to consider a mitigating circumstance. Moury, 992 A.2d at 171; see also Ladamus, 896 A.2d at 595; Commonwealth v. Cannon, 954 A.2d 1222,

1229 (Pa.Super. 2008)(a claim of inadequate consideration of mitigating circumstances does not raise a substantial question for review). However, a claim that the court sentenced outside the guidelines without stating adequate reasons does raise a substantial question which is reviewable on appeal. Commonwealth v. Antidormi, 84 A.3d 736, 760 (Pa.Super. 2014); see also Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa.Super. 1999)(en banc); Commonwealth v. Davis, 737 A.2d 792, 798 (Pa.Super. 1999).

The only argument advanced by the appellant is "the severity of [the] sentence." It fails to address appellant's state parole status, history of similar offenses, and failure to cooperate with the presentence investigation. No substantial question was presented by the appellant.

Even if the merits of the appellant's sentencing contentions must be considered, the appellant fails to demonstrate that there was an abuse of discretion in imposing a sentence outside the guidelines. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007); Commonwealth v. Hoch, 936 A.2d 515, 519 (Pa.Super. 2007). The following explanation has been used as the starting point for determining if the sentencing court properly exercised its discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa.Super. 2006) citing Rodda, 723 A.2d at 214.

A sentence that exceeds the Sentencing Guidelines does not make the sentence unreasonable. The guidelines are advisory and nonbinding, but the sentencing court must consider them in formulating a sentence. Walls, 926 A.2d at 964. Furthermore, if "the

16

sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable," its responsibilities have been fulfilled. Commonwealth v. Gibson, 716 A.2d 1275, 1277 (Pa.Super. 1998). An "unreasonable decision from the sentencing court would be one that is 'irrational' or 'not guided by sound judgment.'" Walls, 926 A.2d at 963 quoting The Random House Dictionary of the English Language, 2084 (2nd ed. 1987).

The purpose of the guidelines was explained in Walls as follows:

> Consultation of the guidelines will assist in avoiding excessive sentences and further the goal of the guidelines, viz., increased uniformity, certainty, and fairness in sentencing. Guidelines serve the laudatory role of aiding and enhancing the judicial exercise of judgment regarding case-specific sentencing. Guidelines may help frame the exercise of judgment by the court in imposing a sentence. Therefore, based upon the above, we reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors – they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

Id. at 964-965.

Here, the Sentencing Guidelines were considered in imposing the appellant's sentence, but a departure from the Guidelines was appropriate and reasonable in this case. The appellant was released on state parole fourteen (14) months prior to this offense. He had also previously served sentences in a state correctional institution for two (2), possibly three (3), earlier drug convictions. His prior state correctional sentencings ranged from three (3) to seven (7) years, and then five (5) to ten (10) years.[36] See Commonwealth v. Simpson, 829 A.2d 334, 339 (Pa.Super. 2003)(Sentencing court may consider that the defendant was on probation at the time of the current offense in deviating from sentencing guidelines); McNabb, 819 A.2d at 57

---

[36] See Presentence Investigation Report (partial report) at pp. 5-6.

17

(The defendant's probationary status at the time of current offense is a proper factor to consider at sentencing.).

A court, when imposing sentence, "is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where presentence reports exist [it is presumed] that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A presentence report constitutes the record and speaks for itself." Antidormi, 84 A.3d at 761 (internal citations and quotations omitted).

Here, the probation department was only able to prepare a partial presentence report due to appellant's lack of cooperation. Even so, the appellant's personal characteristics, including his unlikely potential for rehabilitation, is evident. He was forty-three (43) years old at the time of this offense, and was on state parole. A substantial portion of his life has been spent behind bars. His lack of cooperation with the presentence report is probably a reflection that mitigating circumstances do not exist. He is a recidivist.

This Court in imposing sentence demonstrated an awareness and consideration of the Sentencing Guidelines, and made a conscious decision to deviate from the guidelines.[37] Furthermore, consideration was given to the partial presentence report.[38] His state parole status, history of the same type of convictions, and length of his criminal history were all considered. None of his previous sentences has been a deterrent to his criminal conduct, and this Court

---

[37] N.T.S., at pp. 22-23, 25-26.
[38] See Commonwealth v. Rhoades, 8 A.3d 912, 919 (Pa.Super. 2010) quoting Moury, 992 A.2d at 171 (holding that where the sentencing court had the benefit of a presentence investigation report it is assumed that the sentencing court was aware of relevant information regarding the defendant's character and weighed those factors along with mitigating statutory factors). See also Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988); Commonwealth v. Pollard, 832 A.2d 517, 526 (Pa.Super. 2003).

18

concluded that he is likely to reoffend.[39] No other narrative regarding his character was presented with the exception of his girlfriend's testimony at trial. Overall, this Court concluded that a "pretty bleak picture" has been painted.[40]

Therefore, it was not an abuse of discretion to impose a sentence which deviated from the Sentencing Guidelines. It does not appear that the appellant "might succeed at rehabilitation after serving a substantial term of incarceration." Commonwealth v. Coulverson, 34 A.3d 135, 150 (Pa.Super. 2011).

## c. Trial

### 1. State Parole

The search of appellant's apartment was conducted by state parole agents with the Pennsylvania Board of Probation and Parole. Counsel for the appellant conceded that appellant's parole status was "a necessary part of the story of the trial...."[41] However, he asked that the agents he referred to as "parole agents" rather than state parole agents to shield his client from any connotation associated with state parole.[42]

The motion was denied in part. The Commonwealth was precluded from introducing any evidence regarding the state parole offense, i.e. felony drug offense, the sentence imposed, and length of supervision for which the appellant was being supervised. The Commonwealth was also prohibited from introducing any testimony that the appellant was in state prison.[43] The Commonwealth was permitted to identify the state parole agents as state parole agents, and that the appellant was on state parole.

---

[39] N.T.S., at p. 26.
[40] Id.
[41] Hearing, at p. 5.
[42] Id.
[43] Id. at p. 9.

Evidence will not be prohibited merely because it is harmful to the appellant. A trial is not required to be "sanitized to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." Commonwealth v. Paddy, 800 A.2d 297, 308 (Pa. 2002) quoting Commonwealth v. Lark, 543 A.2d 491, 501 (Pa. 1988); Commonwealth v. Tyson, 119 A.3d 353, 360 (Pa.Super. 2015). Here, the search was conducted by state parole agents because the appellant was on state parole. Prohibiting the Commonwealth from introducing that evidence would disguise the purpose of the visit and leave the jury to wonder why people were entering the appellant's apartment through a window. The testimony was relevant and part of the history and natural development of the facts. The distinction between state parole versus parole agent, which the defense requested, is the type of a distinction that only lawyers could appreciate and did not prejudice the appellant. Additionally, a cautionary instruction was provided to the jury.[44]

### 2. Prosecutorial Misconduct

During defense counsel's closing statement, he made the argument that the appellant would not keep drugs at his apartment because "state parole comes to the apartment on a regular basis."[45] He also suggested that state parole could "search any time they want,"[46] which is incorrect. He also somewhat guilefully argued that the appellant has had "some run-ins with the police. But he's complying with parole."[47] He made this argument with full knowledge of the facts which led to the search of the apartment.

---

[44] Notes of Testimony – Jury Charge and Verdict, at p. 12.
[45] N.T.T., Volume II, at p. 88.
[46] Id. at p. 89.
[47] Id.

20

The Commonwealth in its closing, but without objection, asked the jury to consider a number of different facts, including that the appellant was "on state parole."[48] Following the conclusion of the Commonwealth's closing, defense counsel objected to that comment, and asked for a mistrial.[49]

The jury was provided a cautionary instruction regarding the appellant's state parole status. Commonwealth v. Caldwell, 117 A.3d 763, 774 (Pa.Super. 2015)(A trial court may remove taint through curative instructions.). Specifically, they were told not to disbelieve him because he was on state parole, nor could they infer any guilt because he was on state parole.[50]

The Commonwealth's in-artful argument was designed to respond to defense counsel's state parole arguments. The jury was well aware that the appellant had "some run-ins with the police," but had no knowledge about state parole. Therefore, asking them to consider state parole, a fact which was addressed with the cautionary instruction, did not have the unavoidable effect of prejudicing the appellant. Commonwealth v. Judy, 978 A.2d 1015, 1019 (Pa.Super. 2009)(A mistrial is an "extreme remedy" necessary "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.").

"Prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding the ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard." Commonwealth v. Hogentogler, 53 A.3d 866, 878 (Pa.Super. 2012). Not every intemperate or uncalled for remark by a prosecutor requires a new trial. Commonwealth v. Miles, 681 A.2d 1295, 1302 (Pa. 1996)(Prosecutor's closing that actions of defendants were analogous to the

---

[48] Id. at p. 105.
[49] Id. at p. 106.
[50] Jury Charge and Verdict.

21

hunting behavior of animals of prey did not warrant a new trial.). The isolated comment by the Assistant District Attorney did not create a fixed bias and hostility toward the appellant. The issue of state parole was not new to the jurors, and defense counsel's arguments reinforced his supervision status. Commonwealth v. Hawkins, 701 A.2d 492 (Pa. 1997)(Improper comments by a prosecutor may be examined within the context of defense counsel's conduct.).

The comment by the Assistant District Attorney did not deprive the appellant of a fair trial, and there was no abuse of discretion in refusing the grant a mistrial. See Judy, 978 A.2d at 1019. ([A]n allegation of prosecutorial misconduct requires [a court] to evaluate whether a defendant received a fair trial, not a perfect trial.").

### 3. Trial Judge Inquiries

The Commonwealth called Detective John Gill, an expert in narcotics investigations. His qualifications were elicited in detail by the Assistant District Attorney and would by themselves have satisfied the requirements for an expert witness.[51] He was qualified as an expert in Lehigh County seven (7) times and provided expert testimony in federal court.[52] This Court made limited inquiry about his knowledge regarding the value of heroin.[53] The Assistant District Attorney then asked some follow-up questions.[54] Defense counsel had no objection to Detective Gill's qualifications.

Detective Gill rendered the opinion that the value of the heroin seized was between $800 and $1,300 in Allentown. His testimony was peripheral to the defense which was the appellant did not possess the heroin. Additionally, defense counsel's cross-examination was

---

[51] N.T.T., at pp. 169-174.
[52] Id. at 174.
[53] Id.
[54] Id. at pp. 178-185.

22

used to exploit Detective Gill's expertise to demonstrate the flaws in the investigation. No questions were asked about his opinion regarding the value of the heroin.

Pa.R.E. 614 codifies the common law rule and reiterates that the trial court is permitted to "examine a witness regardless of who calls the witness" in the interests of justice. See Pa.R.E. 614(b). The defense contention that the trial court should have remained a potted plant misperceives the role of the trial judge. "A trial judge has an inherent right, and at times, the duty, to question witnesses to clarify existing facts and to elicit new information." Commonwealth v. Lanza, 323 A.2d 178, 179 (Pa.Super. 1974). See also Commonwealth v. King, 549 A.2d 195 (Pa.Super. 1988)(collecting cases). All of the cases concerning the right of the trial judge to ask questions point out that it should not be done in a "biased or protracted manner." Id. at 197. Furthermore, judicial disbelief or judicial opinion should be carefully avoided. Id.

In King, the role of the trial judge was explained aptly in the following manner:

> A courtroom is a court of justice and not just a battleground for the tilting of attorneys or a testing of their wits and oratory, - to so limit it would often jeopardize or defeat justice. Keating v. Belcher, supra 119 A.2d at 537. It is the purpose of a criminal trial to ascertain the truth, and it is the business of the trial judge to see that the end is obtained. Commonwealth v. Seabrook, 475 Pa. 38, 47, 379 A.2d 564, 568 (1977). Thus, it is proper for the trial court to ask questions about facts which did not appear from either counsel's examination of the witness. See Commonwealth v. Hammer, supra, 494 A.2d at 1060 (1985); Commonwealth v. Seabrook, supra., 379 A.2d at 568. Indeed, the trial court may go so far as to recall a witness to supply an omission of proof as to a material issue. See Commonwealth v. Myma, supra., 123 A. at 487; Commonwealth v. Britton, supra., 482 A.2d at 1297-98; Commonwealth v. Miller, 234 Pa. Super. 146, 154, 339 A.2d 573, 577-78 (1975), judgment aff'd 469 Pa. 24, 364 A.2d 886 (1976).

King, 549 A.2d at 197.

Justice McDermott, in <u>Commonwealth v. Roldan</u>, 572 A.2d 1214, 1215 (Pa. 1990), explained the role of the trial judge in this way:

> That does not mean that a trial judge must sit idly by, a mere evidential technician, silenced in the face of the impossible, absurd, ambiguous or the frivolous. Nor should he leave unasked or unanswered questions that center the matter or amplify relevant testimony on the question or issue. It is a false and dangerous neutrality that would allow loss of liberty or property when another question at further inquiry would gain the fact, expose a false or improper premise, interest or bias of a witness, or correct insinuation unfounded in the record. It is not partisan to maintain the wheel, steering evenly, between competing and often aggressive counsel, anxious to set the course. Nor should a judge yield the gavel to zealous partisans or allow counsel to impose their contentions by contumelious conduct. When others than the trial judge control the proceedings, one side has lost their day in court.

<u>Id</u>. at 125.

Detective Gill's qualifications demonstrated that he was an expert witness regardless of the trial court's questions. His testimony regarding value was also not central to the defense, which challenged the ownership of the heroin found in appellant's apartment.

The jury was also cautioned that if I ask "any questions of a witness, you should not interpret those questions as favoring one side or the other. Remember, you decide the facts.... [T]he questions that I might ask are designed to clarify issues or questions that you might have about the facts or circumstances."[55] The inquiry by this Court was not error.

---

[55] N.T.T., Volume I, at p. 22.

24

## 4. Missing Witness Instruction

The appellant testified that he permitted an individual named "Terrance or T" to keep his clothing in his bedroom. The heroin was found in the bedroom closet. This individual never testified at trial, and no attempt was made to locate him. However, both the appellant and his girlfriend, Ms. Chelders, maintained some contact with him after the appellant's arrest.[56]

Defense counsel and the Assistant District Attorney, however, did not agree on when "Terrance or T's" name was disclosed. The Commonwealth told this Court that he was "made aware of Terrance during Mr. Holihan's opening".[57] The appellant also told the jury "Sue" provided him a ride to the parole office on the day of his arrest, and he left his keys in her vehicle. "Sue" never testified, and her name was first mentioned at trial.

A request by the Commonwealth for a missing witness instruction for both "Terrance or T" and "Sue" was objected to by defense counsel. The objection was overruled. The defense argument regarding "Terrance or T" centered on the appellant's incarceration, but ignored the availability of defense counsel, appellant's girlfriend, and even an investigator to search for that individual. The appellant's girlfriend may have even had "Terrance or T's" phone number. More realistically, if "Terrance or T" was found, he might not have accepted responsibility for the heroin, but may have admitted he had used appellant's apartment to stash his clothes. The defense objection regarding "Sue" was especially specious. She had appellant's keys on the day of his arrest, lived up the street from the appellant, and was described as a friend. Her testimony would have provided an innocent explanation for the appellant's conduct.

As a result, the following standard instruction was provided to the jury:

> There's a question about the weight, if any, you should give
> to the failure of the defendant to call a witness or witnesses.

---

[56] N.T.T., Volume II, at pp. 16, 19, 45-46, 52-53.
[57] Id. at p. 66.

25

You heard about this person T. So the question is if three factors are present and there's no satisfactory explanation for a party's failure to call a potential witness, the jury is allowed to draw a common sense inference that the testimony would have been unfavorable to the party.

The three [necessary] factors are, one, the person is available to that party and only and not the other; two, it appears that the person has special information material to the case; and, three, that the person's testimony would not be merely cumulative.

Therefore, if you find these three factors present and there's no satisfactory explanation for the defendant's failure to call that witness, you may infer, if you chose to do so, that the testimony would have been unfavorable to the defendant.[58]

The "missing witness" inference has also been explained as follows:

[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of the witness, the jury may draw an inference it would have been unfavorable.

Commonwealth v. Boyle, 733 A.2d 633, 638 (Pa.Super. 1999) quoting Commonwealth v.

Manigault, 462 A.2d 239, 241 (Pa. 1983); Commonwealth v. Chamberlain, 658 A.2d 395, 398

(Pa.Super. 1995) quoting Commonwealth v. Sam, 635 A.2d 603, 610 (Pa. 1993)(citations

omitted).

The witnesses in question were not equally available to both parties nor was a

satisfactory explanation provided for their absence. Both of them had "special information

material to the case." "Terrance or T" stored his belongings at appellant's apartment, and "Sue"

would be able to corroborate why the appellant arrived at the parole office without his keys.

---

[58] Jury Charge and Verdict at p. 28; see also Pennsylvania Suggested Standard Jury Instructions (Crim.) 3.21A (Failure to Call Potential Witness).

26

Finally, no evidence was presented that either witness was hostile or prejudiced against the appellant, and it was within his natural interest to present their testimony. <u>Boyle</u>, 733 A.2d at 638. A missing witness instruction was appropriate.

### 5. Jury Instructions

The jury had been deliberating from 12:39 p.m. to 4:42 p.m. when they submitted a question indicating that they had reached a "unanimous decision" on two (2) counts, but not the remaining count. During the course of the subsequent discussion with counsel, and with their agreement, it was determined that that count was the charge of Possession With Intent to Deliver.

Prior to returning the jury to the courtroom, counsel and the court, reviewed Pa.R.Crim.P. 648(D) and the comment to that Rule.[59] The jury was told that they could return a verdict on only two (2) counts. The jurors were also asked if they believed further deliberations would assist them in reaching a verdict, and by a show of hands, four answered affirmatively.

During the inquiry with the jurors, they were told some doubt concerning a retrial existed. They were also provided with the following instruction before returning to the jury room to continue their deliberation:

> Okay. So what I'm going to suggest is, and let me read to you what you heard me say before, about you have a duty to consult with each other and to deliberate towards reaching an agreement if it can be done without doing any interference with your individual judgment. Each juror must decide the case for himself or herself, but only after there's been impartial consideration with his or her fellow jurors.

---

[59] (D) If there are two or more counts in the information or indictment, the jury may report a verdict or verdicts with respect to those counts upon which it has agreed, and the judge shall receive and record all such verdicts. If the jury cannot agree with respect to all the counts in the information or indictment if those counts to which it has agreed operate as an acquittal of lesser or greater included offenses to which they cannot agree, these latter counts shall be dismissed. When the counts in the information or indictment upon which the jury cannot agree are not included offenses of the counts in the information or indictment upon which it has agreed, the defendant or defendants may be retried on those counts in the information or indictment.

In the course of deliberations, a juror should not hesitate to reexamine his or her views and change his or her opinion if convinced it is mistaken. No juror, however, should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.

Keeping these instructions in mind, I'm going to send you back to the jury deliberation room for additional further deliberations. And if you reach the point where you don't believe that further deliberations will assist you, Ms. Shick, as the foreperson, you need to alert me to that fact. So I'm going to send you out for additional deliberations at this point.[60]

Defense counsel did not object, but asked "the Court not to instruct the jury on things like a retrial or the options that happen after that. I think it introduces into their deliberations things that are not appropriate on the fact of the case."[61]

The jury returned to the courtroom thirty-four (34) minutes later with a guilty verdict on all counts. The jury was then polled and all jurors agreed with the verdict.

"A specific and timely objection must be made to preserve a challenge to a particular jury instruction. [The] failure to do so results in a waiver." Moury, 992 A.2d at 178 citing Commonwealth v. Forbes, 867 A.2d 1268, 1274 (Pa.Super. 2005). See Commonwealth v. Betz, 664 A.2d 600, 619 (Pa.Super. 1995)(In order to preserve a challenge to a supplemental charge, defense counsel must make a specific objection before the jury returns to its deliberations.). See also Pa.R.Crim.P. 647(C). Defense counsel did not object to the supplemental jury instruction, but asked that any further instructions not discuss "retrial" or "options that happen after that." The statement of defense counsel does not constitute a "specific objection" and this issue is waived.

---

[60] Jury Charge and Verdict, at pp. 61-62.
[61] Id. at p. 63.

28

Even if defense counsel's statement preserved this issue for appeal, the instructions did not constitute an abuse of discretion. "The relevant scope and standard of review for a claim involving a court's instructions to a deadlocked jury is for an abuse of discretion. [An] abuse of discretion regarding jury instructions [will be found] where the jury verdict is the product of coercion or fatigue." Commonwealth v. Marion, 981 A.2d 230, 235 (Pa.Super. 2009)(citations omitted). Nothing in the instructions suggests coercion, and the length of the deliberations, which were over the course of an afternoon, would not support a claim that the verdict was the product of an overworked and fatigued jury.

It is also not coercive for the trial court in its supplemental instructions to refer to a retrial. Commonwealth v. Montgomery, 687 A.2d 1131, 1135-1136 (Pa.Super. 1996)(Trial court did not impermissibly coerce verdict after being told by jury that it had reached deadlock on two of eight charges by instructing jury that deadlock as to two of the counts charged could result in retrial, necessitating further delay, expense, and stress); Commonwealth v. Gartner, 381 A.2d 114, 122-123 (Pa.Super. 1977)(No error in explaining to the jury that if they were unable to reach a verdict "the case will have to be tried over again at the next Term of Court."). The use of the phrase "some doubt" about a retrial was no more coercive then telling a jury "the case will have to be tried again in front of another jury, added expenses, added problems." Commonwealth v. Truss, 473 A.2d 637 (Pa.Super. 1984). The propriety of a trial judge's statements and instructions must be reviewed "as a whole to determine if any improper judicial wrangling occurred." Montgomery, 687 A.2d at 1136. The jury in this case was provided a non-coercive instruction. See Commonwealth v. Greer, 951 A.2d 346 (Pa. 2008) citing Commonwealth v. Spencer, 275 A.2d 299 (Pa. 1971).

For all the foregoing reasons, the judgment of sentence should be affirmed.

29